**SO ORDERED.**

**SIGNED this 29th day of June, 2016.**



_____
BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

---

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

```
IN RE:                              )
                                    )
NC & VA WARRANTY COMPANY, INC.      )    CASE NO.15-80016
dba 1ST CHOICE MECHANICAL           )    CHAPTER 7
BREAKDOWN COVERAGE,                 )
                                    )
                   Debtor.          )
_____)
NC & VA WARRANTY COMPANY, INC.      )
dba 1ST CHOICE MECHANICAL           )
BREAKDOWN COVERAGE,                 )
                                    )
                   Plaintiff,       )
                                    )    ADV. PROC. NO. A-15-9032
v.                                  )
                                    )
THE FIDELITY BANK,                  )
                                    )
                   Defendant.       )
_____)
```

**MEMORANDUM OPINION GRANTING IN PART**
**AND DENYING IN PART MOTION TO AMEND**

This adversary proceeding came before the Court on April 21, 2016, on the Amended Motion to Amend Complaint [Doc. #63] (the "Amended Motion to Amend") filed by NC & VA Warranty

1

Company, Inc. (the "Plaintiff" or "NCVA") on February 26, 2016.[1]
Sara Conti appeared as plaintiff and chapter 7 trustee (the
"Trustee" or "Plaintiff"). Appearing for the Plaintiff was J.
Alexander S. Barrett. Appearing on behalf of Dealers Assurance
Company ("Dealers Assurance") was John Paul Cournoyer.
Appearing telephonically on behalf of The Fidelity Bank were
Holmes Harden and Wesley Newhouse. The Amended Motion to Amend
seeks leave to amend the Complaint to assert claims against
Dealers Assurance pursuant to Rule 15 Fed. R. Civ. P., made
applicable to this adversary proceeding by Bankruptcy Rule 7015.[2]
The Court, after reviewing all documents of record and the
arguments of counsel during the hearing, has determined that the
Amended Motion to Amend will be GRANTED IN PART with respect to
the claim for breach of contract. The Amended Motion to Amend
will be DENIED IN PART as futile with respect to the remaining
proposed claims. The Court further will schedule a pre-trial
conference to consider scheduling of matters going forward in
this adversary proceeding.

---

[1] The Court permitted the parties to file supplemental briefing to address
whether the Court may take judicial notice of pleadings in related cases as
discussed below. The parties filed supplemental briefing on May 5, 2016
[Doc. #'s 81 and 82].

[2] The Amended Motion to Amend and proposed amended complaint attached thereto
[Doc. # 63-1] ("Proposed Amended Complaint") also sought to add U.S. Bank
National Association ("U.S. Bank") as a defendant. Plaintiff later withdrew
the motion [Doc. # 67] to the extent that it sought to add allegations or
claims against U.S. Bank. After withdrawing the motion as it related to U.S.
Bank, the Trustee did not file with the Court another proposed amended
complaint addressing only Dealers Assurance.

## FACTS

NCVA is a corporation organized and existing under the laws of the State of North Carolina. Complaint, Doc. #1, ¶ 2. NCVA was in the business of providing vehicle service contracts and warranty programs for motor vehicles (known overall as the "Vehicle Service Program"). Id. at ¶ 6. This Vehicle Service Program was sold to consumers through automobile dealers with the purpose of providing the customer with protection against loss in the event of mechanical breakdown of their vehicle. Id. NCVA was responsible for paying claims directly to the customers. Id. at ¶ 7. NCVA contracted with Dealers Assurance, a corporation organized under the laws of the State of Ohio, to act as a re-insurer of NCVA's obligations to customers in the event that NCVA was unable to fulfill its responsibilities. Id. at ¶ 8.

The business relationship between the parties is primarily evidenced by two agreements. On August 9, 2001, NCVA and Dealers Assurance entered into the Insurance Agreement, a copy of which is attached to the Amended Motion to Amend as Exhibit 1. Under the Insurance Agreement, NCVA acted as "Program Administrator" and was responsible for promoting, marketing, installing, maintaining, and administering all aspects of the Vehicle Services Program, collecting and remitting premiums to Dealers Assurance, and facilitating the issuance of certificates

3

and policies of insurance.   Insurance Agreement, Doc. #63-2, ¶ 1.   Dealers Assurance acted as the "Program Insurer." NCVA was the named insured under Dealers Assurance's policy of insurance. Id. at ¶ 2.   The Insurance Agreement provided that NCVA would pay Dealers Assurance a premium each month based on the number of service contracts issued, plus any applicable taxes.   Id. at ¶ 5.   NCVA agreed to maintain a trust account into which it would deposit premiums, reserves, and an administrative deposit to pay customer claims and to indemnify Dealers Assurance in the event that it paid any warranty claims.   See Insurance Agreement, ¶¶ 6(b), 7; Trust Agreement, Section 3.

On November 15, 2005, NCVA, Dealers Assurance, and U.S. Bank entered into the Trust Agreement,[3] a copy of which is attached to the Amended Motion to Amend as Exhibit 2.   Under the Trust Agreement, U.S. Bank agreed to act as trustee for the trust account required by the Insurance Agreement.   The funds placed in the Trust Account could not be withdrawn for any purpose other than to pay claims of customers or to indemnify Dealers Assurance for any claims paid directly by Dealers Assurance.   Amended Complaint, ¶ 14; Insurance Agreement, ¶¶ 6(a) and 7; Trust Agreement, Section 3.   NCVA complied with its

---

[3] It appears from the Amended Motion to Amend that the original trust agreement was with Wachovia Bank as trustee, for the time period from 2001-2005.  U.S. Bank is the successor in interest to Wachovia Bank after U.S. Bank acquired the institutional and other trust business of Wachovia Bank on or about November 29, 2005.  See Proposed Amended Complaint, ¶ 7.

obligations under the Insurance Agreement and made all required deposits into the Trust Account. Amended Complaint, ¶ 12.

Section 1(a) of the Trust Agreement provides:

> The Grantor [NCVA] shall establish the Trust Account and the Trustee [U.S. Bank] shall administer the Trust Account in its name as Trustee for the sole use and benefit of the Beneficiary [Dealers Assurance]. The Trust Account shall be subject to withdrawal by the Beneficiary [Dealers Assurance] solely as provided herein. The Trust Account shall be maintained at all times separate and distinct from all other assets of the Trustee [U.S. Bank] or any other person or entity at an office or branch of the Trustee [U.S. Bank] in the United States.

Trust Agreement, Section 1(a). The Trust Agreement enumerated the exclusive purposes for which Dealers Assurance had the authority to withdraw and apply assets. See Trust Agreement, Sections 2 and 3. If the Trust Account were terminated, U.S. Bank was authorized and required to distribute to NCVA any assets remaining in the Trust Account after satisfaction of outstanding obligations owed to Dealers Assurance under the Insurance Agreement and Dealers Assurance giving U.S. Bank written authority to disburse. See Trust Agreement, Section 10. In addition to being entitled to any excess remaining corpus of the trust, any interest, dividends, and other income earned on the trust assets could be deposited by the U.S. Bank in a separate account for the benefit of NCVA so long as the trust account maintained a balance of at least of 102% of the required

reserves under the agreement. Id., Section 5. These separately posted amounts could be disbursed to NCVA upon NCVA's request and the consent of Dealers Assurance, which could not be unreasonably withheld. Id. Between December 15, 2005, and September 1, 2006, NCVA made deposits of cash and Treasury Bills into the Trust Account in the amount of at least $4,493,490.00 (the "Trust Funds"). Amended Complaint, ¶ 18.

Beginning in approximately December 2005, Dealers Assurance and U.S. Bank transferred the Trust Funds from the Trust Account at U.S. Bank to an account at Interactive Brokers in the name of Marbury Advisors, which account was owned and controlled by Tray Thomas, the son of the sole shareholder of NCVA, Ronnie Thomas. Amended Complaint, ¶ 19. Dealers Assurance and U.S. Bank made these transfers at the request and direction of Tray Thomas. Amended Complaint, ¶ 19. Rhonda Holland, an employee of Dealers Assurance, acting upon the direction and instruction of Robin Ratchford, the then President of Dealers Assurance, gave permission on behalf of Dealers Assurance to U.S. Bank to transfer NCVA's Trust Funds from U.S. Bank to an account at Interactive Brokers not under U.S. Bank's control, but under the control of Tray Thomas. Amended Complaint, ¶ 20. Such transfers ultimately totaled approximately $4 million. Amended Complaint, ¶ 20. By May, 2009, Kirk Borchardt, CEO of Dealers Assurance, knew that the Trust Funds were not with U.S. Bank and

6

had been transferred to Interactive Brokers in an account in the
name of Marbury Advisors, controlled by Tray Thomas. Amended
Complaint, ¶ 21. At no time did Dealers Assurance take any
steps to recover the Trust Funds or to notify Ronnie Thomas or
NCVA that the Trust Funds were no longer in the control of the
Trustee, U.S. Bank. Amended Complaint, ¶ 22.

U.S. Bank received purported statements of account directly
from Tray Thomas rather than from Interactive Brokers,
erroneously showing that the Trust Funds were still in the
account at Interactive Brokers. Amended Complaint, ¶ 24. U.S.
Bank did not verify the accuracy of these statements, id., but
nevertheless represented to NCVA that the funds were still on
deposit at U.S. Bank, knowing that the Trust Funds had in fact
been transferred to Interactive Brokers. Amended Complaint, ¶
24. U.S. Bank also provided confirmations to the auditors of
Dealers Assurance that it had actual custody and control of the
Trust Funds. Amended Complaint, ¶ 27. In October or November
of 2009, U.S. Bank resigned as Trustee without giving NCVA a
reason or disclosing that the Trust Funds were no longer in
their control. Amended Complaint, ¶ 29. On November 30, 2009,
Fidelity Bank became the new Trustee pursuant to a new trust
agreement. Amended Complaint, ¶¶ 29 and 33.

NCVA filed bankruptcy under chapter 7 on January 7, 2015,
and Sara A. Conti was appointed as the chapter 7 trustee for

NCVA's estate.    Dealers Assurance filed a proof of claim on April 29, 2015, asserting a claim of $4,000,000.00 based on the loss of the Trust Funds.  <u>See</u> Case No. 15-80016, Claim No. 7.

Prior to filing for bankruptcy, on December 20, 2013,[4] NCVA brought an action against Tray Thomas, among others, in the United States District Court for the Middle District of North Carolina (the "District Court Complaint").[5]

In the District Court Complaint, the Debtor made the following allegations: "Starting on or about 2002 and continuing through to 2012, Defendant [Tray] Thomas obtained funds from [NCVA] and other individuals and entities by representing that he could invest those same funds for a higher return on investment."  District Court Complaint, ¶ 10.  "Beginning on or about 2002 to December of 2012, Defendant [Tray] Thomas obtained access to the funds placed in trust for the benefit of Dealers Assurance and transferred them to a third-party financial institution to accounts owned by Marbury Advisors and his wife Cheryl Stone, among others."  <u>Id.</u> at ¶ 24.  "Plaintiffs relied on Defendant [Tray] Thomas' representations and authorized him to make transfers of N.C. & VA. Warranty's funds for purposes of investing those funds on behalf of N.C. & VA. Warranty."  <u>Id.</u> at

---

[4] An amended complaint was later filed on September 15, 2014.

[5] Case No. 13-cv-1130, <u>Ronnie E. Thomas and N.C. & VA. Warranty Inc. v. Tracy Lee Thomas, et al</u>

¶ 27.   This authority was gained, at least in part by Tray Thomas providing only signature pages of documents to Ronnie Thomas for him to execute.   Id. ¶¶ 36, 69, 70.   "Plaintiff Ronnie Thomas stressed to Defendant Tracy Lee Thomas that the money being invested belonged to N.C. & VA. Warranty and third-party beneficiaries, not to Plaintiff Ronnie Thomas personally and therefore had to be available on very short notice." Id. at ¶ 29.   Trey Thomas further provided false banking statements to Ronnie Thomas indicating that NCVA funds remained in a sub-account at the bank.   Id. ¶¶ 91-93.   After the petition date, the Trustee intervened as the proper party plaintiff in the District Court case on behalf of NCVA, and received a default judgment against Tray Thomas and in favor of the Debtor in the amount of $26,734,204.56.[6]   Case No. 13-cv-1130, Ronnie E. Thomas and N.C. & VA. Warranty Inc. v. Tracy Lee Thomas, et al, Doc. #22, Default Judgment.

## STANDARD OF REVIEW

A motion to amend the complaint is governed by Fed. R. Civ. P. 15, made applicable to this adversary proceeding pursuant to Fed. R. Bankr. P. 7015.[7]   Under Rule 15, the plaintiff "may amend

---

[6] The judgment provided for damages of $8,911,409.52 which amount was then trebled pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964(c).

[7] According to the Fourth Circuit, amendments seeking to add parties, such as this one, are governed by Rule 15(a), rather than by Rules 20 or 21, as some other courts have indicated.  See Galustian v. Peter, 591 F.3d 724, 730 (4th Cir. 2010).

its complaint once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). After this time has passed, the plaintiff may only amend its complaint with the opposing party's written consent or with leave of court. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." Id.

When considering timely motions to amend, the Fourth Circuit has "interpreted Rule 15(a) to provide that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (citing Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir.1986)). An amendment is futile when the proposed amended complaint fails to state a claim and would be subject to dismissal under Fed. R. Civ. P. 12(b)(6). United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008); Van Leer v. Deutsche Bank Sec., Inc., 479 F. App'x 475, 479 (4th Cir. 2012).

Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although a plaintiff need only plead a short and plain statement of the claim establishing that he or she is entitled to relief, Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992), "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Thus, each claim asserted by NCVA will survive a motion to dismiss only if the Amended Complaint contains "sufficient factual matter, accepted as true, 'to state a claim for relief that is plausible on its face.'" Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955). The United States Supreme Court set forth this plausibility standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (citations omitted).

To determine plausibility, all facts set forth in the Amended Complaint are taken as true. However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement" will not constitute well-pled facts necessary to withstand a motion to dismiss. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

In analyzing the claims alleged in the Amended Complaint, the Court will determine if the Plaintiff has "nudged their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570, 127 S.Ct. 1955. "Although '[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party,' a 'court need not [] accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.'" Anderson v. Kimberly-Clark Corp., 570 Fed.Appx. 927, 931 (Fed. Cir. 2014) (quoting Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)). See also GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1385 (10th Cir. 1997) ("[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true."). Pursuant to Fed. R. Evid. 201(b)(2), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily

determined from sources whose accuracy cannot reasonably be questioned."  The Fourth Circuit has "note[d] that '[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.'"  <u>Colonial Penn Ins. Co. v. Coil</u>, 887 F.2d 1236, 1239 (4th Cir. 1989) (citing 21 C. Wright & K. Graham, Federal Practice and Procedure; Evidence § 5106 at 505 (1977)).

**ANALYSIS**

**A.**   <u>**Applicable Law**</u>

The Trust Agreement provides that "[t]his Agreement shall be subject to and governed by the laws of the State of Ohio." <u>See</u> Trust Agreement, p. 8, Section 12.  In their briefs filed with the Court, and with the exception of the Trustee's claim under Chapter 75 of the North Carolina General Statutes,[8] the parties have assumed that Ohio law applies to the underlying claims asserted in this case.  Therefore, for purposes of the current motion, the Court will apply the substantive law of Ohio, while applying federal law for procedural matters.

**B.**   <u>**Judicial Notice Of The District Court Complaint**</u>

As set forth above, the Court considers whether the proposed amendment to the Complaint would be futile under the standards for dismissal as provided by Rule 12(b)(6) Fed. R.

---

[8] The Trustee's putative claim under Chapter 75 of the North Carolina General Statutes is addressed under North Carolina law separately below.

Civ. Pro.  When ruling on Rule 12(b)(6) motions to dismiss, a court may consider "matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S.Ct. 2499, 2509 (2007).  Dealers Assurance requests that the Court take judicial notice of the District Court Complaint and the allegations made on behalf of the Debtor therein under Rule 201(b)(2) Fed. R. Evid.  See Brief of Dealers Assurance In Support of Application of Judicial Estoppel As A Bar To Plaintiff's Proposed Claims [Doc. # 81] ("Estoppel Brief").

Dealers Assurance is correct that this Court may take judicial notice of the District Court Complaint.  It is well settled that a court may take judicial notice of related pleadings and proceedings in other courts.  See Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) (taking judicial notice of guilty pleas in related criminal case, and citing, inter alia, St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979), for the proposition that "'federal courts . . . may take notice of proceedings in other courts, both within and without the federal system, if those proceedings have a direct relation to matters at issue'").

The Trustee does not dispute that the Court may take judicial notice of the proceedings in the District Court case, including the existence of the District Court Complaint.

Rather, the Trustee contends that judicial notice does not extend so far as to permit the Court to take judicial notice of the factual allegations made in that pleading.  In support of the Trustee's argument, the Trustee cites Nolte v. Capital One Fin. Corp., 390 F.3d 311 (4th Cir. 2004), and ZAK v. Chelsea Therapeutics Int'l, Ltd. 780 F.3d 597 (4th Cir. 2015).

The Trustee's reliance on these cases is misplaced.  In Nolte and ZAK, the Fourth Circuit held that judicial notice did not permit the court to take judicial notice of the truth of facts alleged in other pleadings or public filings by the Securities and Exchange Commission ("SEC").  In Nolte, the plaintiffs requested that the court take judicial notice of facts alleged by the SEC in a related matter.  Nolte, 390 F.3d at 317 n.*.  The Fourth Circuit refused to take judicial notice of the allegations in the SEC's complaint, noting that, "[a]lthough the filing of the SEC complaint against Wiley is indisputable, the facts alleged therein are not.  A court cannot take notice of (and so assume the truth of) mere allegations . . . ."  Id.  The opinion in ZAK is in accord.  In ZAK, the district court below had taken judicial notice of certain facts in SEC filings in concluding that the plaintiffs' allegations of scienter were insufficient.  ZAK, 780 F.3d at 601.  The Fourth Circuit reversed, similarly holding that the district court had

erred in taking judicial notice of the facts in the SEC filing
and accepting those facts as true.  Id.

The request for judicial notice in this case is different
than in Nolte and ZAK.  Dealers Assurance does not ask this
Court to assume the truth of the allegations made on behalf of
the Debtor in the District Court Complaint.  Instead, Dealers
Assurance asks the Court to take notice that the Debtor made
those allegations in a complaint upon which the Trustee received
a judgment from the District Court.  As a result of having made
the allegations and successfully receiving judgment on the
Complaint, and regardless of the actual truth of the
allegations, Dealers Assurance argues that the Trustee is
judicially estopped from taking a different position in this
case.  It is not reasonably subject to dispute that the District
Court Complaint was filed by the Debtor, that the allegations in
question were made on behalf of the Debtor, that the Trustee
intervened as the real party in interest in that action, and
that the Trustee obtained default judgment against Tray Thomas.
This is the type of judicial notice of related proceedings that
is allowed.  The Court will address judicial estoppel and the
effect, if any, of taking judicial notice of the proceedings in
the District Court below, but the Court will grant the request
for the Court to take judicial notice pursuant to Fed. R. Evid.
201(b)(2) of the District Court Complaint and the allegations

made on behalf of the Debtor therein, along with the judgment obtained by the Trustee on behalf of the Debtor in that case.

## C.   <u>Judicial Estoppel</u>

Having taken judicial notice of the District Court Complaint, the Court must consider whether the Trustee is judicially estopped at this stage of these proceedings from asserting the surviving claim in this case on the basis of the allegations in the District Court Complaint.  The Court concludes that she is not judicially estopped for purposes of the current motion to amend and futility under the standards of Rule 12(b)(6).

The decision whether to impose judicial estoppel is left to the trial court's discretion.  <u>King v. Herbert J. Thomas Mem.</u> <u>Hosp.</u>, 159 F.3d 192, 196 (4th Cir. 1998) ("As an equitable doctrine, judicial estoppel is invoked in the discretion of the district court . . . .").  The Fourth Circuit has delineated the requirements for judicial estoppel in this circuit.

> Three elements must be satisfied before judicial estoppel will be applied.  "First, the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation." <u>Lowery v. Stoval</u>, 92 F.3d 219, 224 (4th Cir. 1996).  The position at issue must be one of fact as opposed to one of law or legal theory. <u>Id.</u> "Second, the prior inconsistent position must have been accepted by the court." <u>Id.</u> Lastly, the party against whom judicial estoppel is to be applied must have "intentionally misled the court to gain unfair advantage." <u>Tenneco Chems., Inc. v. William T.</u>

17

<u>Burnett & Co.</u>, 691 F.2d 658, 665 (4th Cir. 1982). This bad faith requirement is the "determinative factor." <u>John S. Clark Co.</u>, 65 F.3d at 29.

<u>Zinkand v. Brown</u>, 478 F.3d 634, 638 (4th Cir. 2007). Judicial estoppel may not be imposed when the party's position is not clearly inconsistent with the prior position. <u>Ogden Martin Systems of Indianapolis, Inc. v. Whiting Corp.</u>, 179 F.3d 523, 528 (7th Cir. 1999). Finally, "[w]ithout bad faith, there can be no judicial estoppel." <u>Zinkand</u>, 478 F.3d at 638.

In this case and with respect to the surviving breach of contract claim, the claim for judicial estoppel fails all three required elements because: (i) the allegations in the District Court Complaint are not clearly inconsistent with the surviving claims for breach of contract asserted by the Trustee; (ii) the record is far from clear that the Trustee's default judgment was based even partially upon the allegations to which Dealers Assurance seeks to bind the Trustee; and (iii) the circumstances do not sufficiently evidence bad faith by the Trustee or an attempt by her to gain an unfair advantage.

The most potentially damaging allegation in the District Court Complaint is that "Plaintiffs . . . authorized [Tray Thomas] to make transfers of N.C. & VA. Warranty's funds for purposes of investing those funds on behalf of N.C. & VA. Warranty." District Court Complaint, ¶ 27. This allegation, depending upon the construction given to it by the Court,

potentially conjures notions of knowledge and waiver if considered without reference to all other allegations in the District Court Complaint. Even if so considered, it does not directly contradict the allegations that Dealers Assurance breached the terms of the contract[9] by removing funds for purposes other than allowed under the parties' agreements. When considering whether the Trustee's proposed amendment was futile under the standards of Rule 12(b)(6), all inferences must be made in her favor. The Court will not impose the harsh systemic remedy[10] of judicial estoppel as a tactical litigation windfall only because a previous allegation is susceptible to an interpretation that might give rise to other affirmative defenses that will remain open to Dealers Assurance as the case progresses, if the underlying facts merit their application. Cf. Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (finding that a motion to dismiss generally cannot reach the merits of an affirmative defense unless it clearly appears on the face of the complaint).

Even if the positions of the Trustee were clearly inconsistent with the claims asserted in this case, the record

---

[9] The Trustee's other putative claims are futile for the reasons set forth below. Therefore, the Court need not reach the issue of judicial estoppel with respect to any impact the allegations in the District Court Complaint might have on those claims.

[10] Judicial estoppel is a matter of federal law, rather than state law, and exists to protect the integrity of the courts, rather than any interest of the litigants. Stovall, 92 F.3d at 223, n.3.

in this case does not establish that the default judgment obtained by the Trustee was dependent upon the allegation that the Debtor authorized Tray Thomas to remove or to steal funds from the trust account.    The Default Judgment entered by the District Court does not specify upon which allegations the court relied in entering judgment.    The allegations include assertions that Tray Thomas misrepresented that the funds remained in the bank accounts.    Furthermore, Tray Thomas would have been liable on the bases and for the amounts set forth in the judgment whether he removed the funds wholly without authority, or whether any ostensible authority was obtained through fraud.

Finally, the circumstances of this case do not indicate that the Trustee is attempting to play fast and loose with the facts in order to gain an unfair advantage in this case.    For these reasons, the Court will not impose judicial estoppel at this stage of the proceedings to prevent the proposed amendment to the extent allowed herein.

D.    **The Proposed Claims**

NCVA moves to amend its complaint to add Dealers Assurance as a party defendant and to assert seven claims for relief against it.[11]    The trustee attempts to assert the following

---

[11] The Proposed Amended Complaint contains claims asserted only against U.S. Bank and claims asserted jointly against U.S. Bank and Dealers Assurance. NCVA withdrew any portion of its Motion to Amend in regard to U.S. Bank [Doc. #67].  Therefore, the claims listed herein are the surviving claims against Dealers Assurance.

proposed new claims for relief against Dealers Assurance: (1) breach of contract; (2) breach of fiduciary duty; (3) negligence; (4) actual and constructive fraud; (5) unfair and deceptive trade practices; (6) aiding and abetting conversion; and (7) unjust enrichment. The Court will consider each proposed new claim seriatim. If a putative claim cannot survive a motion to dismiss then amendment would be futile, and the motion to amend should be denied with regard to that claim.

## 1. Breach of Contract

"In order to demonstrate a breach of contract, the plaintiff must demonstrate by a preponderance of the evidence: (1) that a contract existed; (2) that the plaintiff fulfilled its obligations; (3) that the defendants failed to fulfill their obligations; and (4) that damages resulted from this failure." K & D Farms, Ltd v. Enervest Operating, L.L.C., No. 2015CA00038, 2015 WL 6507785, at *4 (Ohio Ct. App. Oct. 26, 2015) (citing Moore v. Adams, No. 2007AP090066, 2015 WL 4907590, at *3 (Ohio Ct. App. Nov. 17, 2008).

Plaintiff's allegations, taken as true and construed in a light most favorable to the Trustee, meet the requirements for a successful breach of contract claim under Ohio law. The Plaintiff alleges the existence of obligations under both the Insurance Agreement and the Trust Agreement, each of which were signed by the parties and copies of which are attached to the

21

Proposed Amended Complaint. The Proposed Amended Complaint alleges that the Trust Agreement was entered into as part of the Insurance Agreement. Proposed Amended Complaint, ¶ 3. Construed in a light most favorable to the Plaintiff, the documents support the allegation that the Trust Agreement was entered as part of the insurance arrangement between the parties. See e.g., Trust Agreement, ¶ 6(b). Plaintiff further alleges that NCVA fulfilled its obligations under the contracts, including placing the required reserve amounts into the Trust Account, and that Dealers Assurance breached its obligations by allowing and/or directing funds to be transferred out of the Trust Account for a reason not specified in the Insurance Agreement or the Trust Agreement. Plaintiff has sufficiently alleged damages caused by the alleged breach.

Therefore, considering the liberal standards of Rule 15 and making all inferences in favor of the trustee, as the Court must under Rule 12(b)(6), the trustee's proposed claim for breach of contract is not futile, and Plaintiff will be allowed to amend her complaint to add a breach of contract claim against Dealers Assurance.[12]

---

[12] Dealers Assurance also argues that amendment would be futile in this case because any and all of these claims would be subject to transfer to a federal or state court in Ohio based on a forum selection provision in the Trust Agreement. See Response of Dealers Assurance to Amended Motion to Amend [Doc. #68], FN 2; see also Trust Agreement, p. 8, Section 12. Section 12 of the Trust Agreement is titled "Governing Law and Jurisdiction" and states: "This Agreement shall be subject to and governed by the laws of the State of Ohio. Any action or proceeding brought by Grantor arising out of or relating

## 2. Breach of Fiduciary Duty

The elements of a breach of fiduciary duty claim under Ohio law are: "(1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom." _Grossniklaus v. Waltman_, No. 09CA15, 2010 WL 2546704, at *2 (Ohio Ct. App. June 24, 2010) (citing _Camp St. Mary's Assn. of W. Ohio Conference of the United Methodist Church, Inc._, 176 Ohio App. 3d 54, 68, 889 N.E.2d 1066, 1076 (2008)). The Supreme Court of Ohio has "defined the term 'fiduciary relationship' as one 'in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.'" _Hope Acad. Broadway Campus v. White Hat Mgt., L.L.C._, 145 Ohio St.3d 29, 40, 46 N.E.3d 665, 676 (2015) (quoting _In re_

to this Agreement must be, and any action or proceeding brought by the Trustee or Beneficiary arising out of or relating to this Agreement may be, brought in the Federal Court of the Southern District of Ohio, Eastern Division, if the matter in controversy meets the jurisdictional requirements, or the Court of Common Pleas in Columbus, Ohio, if such federal jurisdictional requirements are not met, and the parties hereto consent and submit to the jurisdiction and venue of such courts for any such action or proceeding." Generally, mandatory forum selection clauses will be enforced by the courts. _See_ _Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas_, 134 S. Ct. 568, 575, 187 L. Ed. 2d 487 (2013). However, Dealers Assurance has filed a proof of claim in the main bankruptcy case (Case No. 15-80016, Claim No. 7) in which Dealers alleges damages arising from NCVA breaching the Trust Agreement in the amount of $4,000,000.00. The breach of contract claim in this Adversary Proceeding and Dealers Assurance's proof of claim deal with the same underlying agreements, and encompass the same transactions and circumstances, and the Court would necessarily resolve any reciprocal breach of contract claims between the parties in ruling on Dealers Assurance's proof of claim. In any event, the Court in _Atlantic Marine_ made clear that a forum selection clause is not jurisdictional if venue is appropriate. _See_ _id._ at 577–579.

Termination of Emp. of Pratt, 40 Ohio St.2d 107, 115, 321 N.E.2d 603, 609 (1974)). "In determining whether a fiduciary relationship has been created, the main question is whether a party agreed to act primarily for the benefit of another in matters connected with its undertaking." Id. (citing Strock v. Pressnell, 38 Ohio St.3d 207, 216, 527 N.E.2d 1235, 1243 (1988)). "The burden of proving the existence of a fiduciary relationship is on the party asserting it." Grossniklaus, 2010 WL 2546074, at *3 (citing Craggett v. Adell Ins. Agency, 92 Ohio App.3d 443, 451, 635 N.E.2d 1326, 1331 (1993)).

"It is well-settled in Ohio that it is 'no tort to breach a contract, no matter how wilful or malicious the breach.'" Empire-Detroit Steel Div. Cyclops Corp. v. Pennsylvania Elec. Coil, Inc., No. CA-2903, 1992 WL 173313, *3 (Ohio Ct. App. 1992). Although Ohio recognizes a limited exception to this general rule for a tortious claim of bad faith where an insurer fails to pay insured claims, id., the Trustee has not alleged a tortious claim for bad faith or that Dealers Assurance failed to pay any claims in bad faith.

Instead, NCVA alleges that Dealers Assurance assumed fiduciary duties owed to NCVA merely by entering the Trust Agreement. Proposed Complaint ¶ 14. The Court need not accept this conclusory allegation. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

24

The proposed complaint factually focuses on U.S. Bank's obligations as trustee for the reserve account, rather than identifying any extra-contractual basis for the imposition of a fiduciary obligation owed by Dealers Assurance to NCVA. Proposed Complaint, ¶ 17. The proposed complaint does not give any explanation of how Dealers Assurance, as the sole beneficiary of the Trust Agreement, accepted fiduciary obligations in performing its contractual obligations. The Complaint contains a number of assertions by the Debtor regarding U.S. Bank's and Dealers Assurance's (jointly) alleged breaches of the contractual terms and their failure to disclose facts and events. Id. ¶¶ 19-34. But these alleged breaches and failures to disclose do not transform an already established contractual relationship into a fiduciary relationship. NCVA has failed to plead facts which, if proven, would create a plausible claim that Dealers Assurance owed it any fiduciary duties.[13]

In fact, the contracts indicate that the parties did not intend to impose a fiduciary duty owed by Dealers Assurance to NCVA. On the contrary, the Insurance Agreement specifically

---

[13] North Carolina law is in accord. South Atlantic Ltd. P'ship of Tenn. L.P. v. Riese, 284 F.3d 518, 533 (4th Cir. 2002) ("North Carolina is reluctant to impose 'extracontractual fiduciary obligations' in the context of general commercial contracts; thus, even when parties to an arms-length transaction have reposed confidence in each other, no fiduciary duty arises unless one party thoroughly dominates the other."). The Trustee has not alleged facts which would demonstrate such domination in this case.

imposes fiduciary obligations owed by NCVA to Dealers Assurance, Insurance Agreement ¶ 6(a), and Dealers Assurance is the beneficiary under the Trust Agreement.  Trust Agreement, p. 1 ("this Agreement is made for the sole use and benefit of the Beneficiary. . ."). If the parties intended that Dealers Assurance act as a fiduciary with respect to the contractual limitations on its withdrawal of funds, they could have included a specific provision imposing such a special duty as they did for NCVA.  When construing contracts, Ohio courts apply the rule of <u>expressio</u> <u>unis</u> <u>est</u> <u>exlusio</u> <u>alterius</u>, or "the inclusion of specific things implies the exclusion of those not mentioned." <u>Helberg v. Natl. Union Fire Ins. Co.</u>, 102 Ohio App.3d 679, 683, 657 N.E.2d 832, 835 (1995).  The Insurance Agreement provides that "NC&VA shall receive all premiums due [Dealers] Assurance and claims reserves for the policies in a fiduciary capacity, and use the funds only as may be authorized by [Dealers] Assurance pursuant to Paragraph 7 of this Agreement."  Insurance Agreement, ¶ 6(a).  No such reciprocal provision imposes fiduciary obligations on Dealers Assurance under the agreements. The burden is on NCVA to prove the existence of a fiduciary relationship and the alleged facts, even taken as true, fail to do so.  Therefore, the motion to amend with respect to the claim for breach of fiduciary duty will be denied as futile.

**3. Negligence**

"To prevail on a claim for negligence under Ohio law the plaintiff must prove the following elements: (1) the existence of a duty owed by the defendant to the plaintiff; (2) the breach of duty; (3) causation; and (4) damages." Daher v. Bally's Total Fitness, No. 2014-L-061, 2015 WL 1138723, at *3 (Ohio Ct. App. Mar. 16, 2015) (citing Erie Ins. Co. v. Cortright, No. 2002-A-0101, 2003 WL 22931380, at *1 (Ohio Ct. App. Dec. 12, 2003)).

NCVA has failed to show the existence of an extra-contractual duty owed by Dealers Assurance to NCVA. The Proposed Amended Complaint states that, "[a]side from their contractual and fiduciary duties as alleged herein, U.S. Bank and Dealers Assurance owed to NCVA duties to exercise reasonable care and diligence in taking care of the Trust Funds, protecting the Trust Funds from loss or theft, and preserving the Trust Funds for the benefit of NCVA." Proposed Amended Complaint, ¶ 45. These are duties that a trustee might owe to the grantor or beneficiary of a trust, but these are not duties which a beneficiary owes to support a negligence claim in tort to the grantor beyond the terms of their contract. Absent extraordinary circumstances not alleged here, there simply is no duty supporting a negligence claim in tort with respect to damages flowing from alleged breaches of contractual duties under Ohio law.

27

The Supreme Court of Ohio has summarized this separation of contract claims from tort claims as follows:

> This rule stems from the recognition of a balance between tort law, designed to redress losses suffered by breach of a duty imposed by law to protect societal interests, and contract law, which holds that parties to a commercial transaction should remain free to govern their own affairs. Tort law is not designed to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation necessitates an analysis of the damages which were within the contemplation of the parties when framing their agreement. It remains the particular province of the law of contracts.

Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc., 106 Ohio St.3d 412, 414, 835 N.E.2d 701, 704 (2005) (citations omitted) (quotations omitted).

Any damages to NCVA under this claim of negligence are purely economic and so are more suitable for redress under contract rather than in tort. Therefore, the Motion to Amend with respect to the claim of negligence will be denied as futile.

**4. Constructive and Actual Fraud**

"The elements of fraud under Ohio law are: (1) a representation or, when there is a duty to disclose, a concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that

knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance on the representation or concealment; and (6) an injury proximately caused by that reliance." ITS Fin., LLC v. Advent Fin. Servs., LLC, 823 F. Supp. 2d 772, 779 (S.D. Ohio 2011) (citing Williams v. Aetna Fin. Co., 83 Ohio St.3d 464, 700 N.E.2d 859 (1998)). Pursuant to Fed. R. Civ. P. 9(b), fraud must be pled with particularity and "[a]t a minimum, [the plaintiff] must allege the time, place and contents of the misrepresentations upon which [it] relied." Id. (citing Frank v. Dana Corp., 547 F.3d 564 (6th Cir. 2008)).

Although the Trustee includes allegations of misrepresentations by U.S. Bank, see Proposed Amended Complaint, ¶ 24, the Trustee has abandoned her attempt to add U.S. Bank as a party to this adversary proceeding. The Trustee does not allege any specific misrepresentations by Dealers Assurance. Nor does the Trustee allege that Dealers Assurance failed to disclose facts to the Debtor prior to the entry of the contracts as a fraudulent inducement. Instead, the Trustee relies upon Dealers Assurance failing to disclose that the funds had been moved out of U.S. Bank's control after the contracts were in place and for purposes other than those permitted under the terms of the contracts. Proposed Amended Complaint, ¶¶ 49-51. This amounts to no more than a purported claim for fraud arising

out of Dealers Assurance allegedly not disclosing that it was in breach of the contractual terms.  Ohio does not recognize claims for fraud in these circumstances.  <u>Strategy Group for Media, Inc. v. Lowden</u>, No. 12 CAE 03 0016, 2013 WL 1343614, *4-5 (Ohio Ct. App. 2013) ("a tort claim based upon the same actions as those upon which a claim for contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract;" and "fraud is committed by a failure to disclose only when the person is under a duty to disclose, and the duty to disclose arises when one party has information that the other party is entitled to know because of a fiduciary or another similar relation of trust and confidence between them").[14]  As set forth above, the Trustee has not alleged sufficient facts to

---

[14] Ohio law goes even further, and requires not only that the actions of which the plaintiff complains fall outside the defendant's contractual duties, but also that the injury from the alleged fraud be "unique and separate from any injury resulting from a breach of contract." <u>Med. Billing, Inc. v. Med. Mgmt. Scis., Inc.</u>, 212 F.3d 332, 338 (6th Cir. 2000).  In this case, NCVA alleges that the injury arising out of fraud is a result of Dealers Assurance failing to disclose to them that the assets were no longer in trust and had been transferred out of the trust in violation of the contract.  The injury to NCVA for fraud therefor cannot exceed the amount of funds wrongfully removed from the account under the terms of the contracts.  Since the allegations in this case are sufficient to establish that the injury to NCVA is not "unique and separate" from that of the breach of contract, NCVA cannot show an essential element of the claim of fraud.  <u>Cf.</u> <u>Lebo v. IMPAC Funding Corp.</u>, No. 5:11CV1857, 2012 WL 630046, at *5-6 (N.D. Ohio 2012) (where the plaintiff alleged that the defendant fraudulently misrepresented that it was the holder of a note that was entitled to enforce the contract, and in the alternative plead that the defendant breached the contract, it was improper at the 12(b)(6) stage to dismiss the complaint because it was unclear from the allegations that the claims would produce duplicative damages).  In contrast to the facts in <u>Lebo</u>, the allegations in this case are sufficient to establish that any damages caused by an alleged fraud are subsumed in damages from any alleged breach of contract.

support a relationship of special trust and confidence between Dealers Assurance and NCVA which would give rise to a duty to disclose by Dealers Assurance. Therefore, any fraudulent concealment claim fails, and the motion to amend with respect to this claim of fraud will be denied.

### 5. Unfair and Deceptive Trade Practices

Plaintiff's fifth claim for relief against Dealers Assurance is for unfair and deceptive trade practices in violation of Chapter 75 of the North Carolina General Statutes. This Court has serious questions about whether the Trustee may maintain a North Carolina Statutory claim in a case dealing with an interstate transaction where the parties seem to agree that Ohio law applies. See Lloyd v. Carnation Co., 61 N.C. App. 381, 301 S.E.2d 414 (1983) (where Virginia law applied to an underlying contract, "allegations of wrongful acts and injuries committed in the State of Virginia which allegedly are based on the North Carolina statutes are of no avail, [and] [t]he North Carolina statute cannot be constitutionally applied in Virginia"). The Court need not decide the applicability of the North Carolina statutes to this dispute, however, because even assuming that Chapter 75 applies, the Trustee has failed to state a claim under its provisions.

The Unfair and Deceptive Trade Practices Act (UTPA) prohibits "[u]nfair methods of competition in or affecting

31

commerce, and unfair or deceptive acts or practices in or affecting commerce . . . ." N.C. Gen. Stat. § 75-1.1(a). To state a claim for relief under the UTPA, the plaintiff must demonstrate: (1) an unfair or deceptive practice or act; (2) in or affecting commerce; (3) which proximately caused actual injury to the plaintiff. In re B & K Coastal, LLC, No. 11-08609-8-JRL, 2013 WL 1935300, at *6 (Bankr. E.D.N.C. May 9, 2013) (citing Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001)).

It is well settled that even an intentional breach of contract is not an unfair or deceptive act under Chapter 75. See e.g., Bob Timberlake Collection, Inc. v. Edwards, 176 N.C. App. 33, 42, 626 S.E.2d 315, 323 (2006). "The conduct must be immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Kelly v. Georgia-Pac. LLC, 671 F. Supp. 2d 785, 798-99 (E.D.N.C. 2009). Furthermore, "[s]ome type of egregious or aggravating circumstances must be alleged and proved before the [Act's] provisions may [take effect]." Dalton v. Camp, 353 N.C. 647, 657, 548 S.E.2d 704, 711 (2001) (alterations in original).

Although "[c]onduct constituting a breach of fiduciary duty . . . is sufficient to support an unfair and deceptive trade practices claim so long as the other elements of the claim are also present," In re Brokers, Inc., 396 B.R. 146, 161 (Bankr.

M.D.N.C. 2008) (citing Spence v. Spaulding & Perkins Ltd., 82 N.C.App. 665, 668, 347 S.E.2d 864, 866 (1986)), the Court has determined that the Trustee has failed to allege a claim for breach of fiduciary duty.  Similarly, establishing a claim for fraud necessarily constitutes a violation of Chapter 75, Hardy v. Toler, 288 N.C. 303, 218 S.E.2d 342 (1975), but the Trustee similarly has not sufficiently pled a claim for fraud.

The Fourth Circuit has admonished trial courts against allowing breach of contract claims to masquerade as Chapter 75 claims.  In Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 334-35 (4th Cir. 1998), the plaintiffs were Meineke franchisees whose franchise contracts required them to pay significant portions of their revenues into an alleged trust account that was to be used by the franchisor solely for advertising on behalf of the franchisees.  As alleged in this case, and despite the contractual limitations on the use of the funds, the franchisor removed the funds from the reserve account and used them for other purposes, including its own purposes. Id. at 335.  The district court permitted the Chapter 75 claim arising out of this breach to go to the jury in a class action lawsuit, which ultimately resulted in a judgment of $590,869,788.00 being entered against the franchisor, Meineke. Id. at 336-37.

33

The Fourth Circuit reversed, holding that the allegations regarding the use of funds for extra-contractual purposes constituted claims sounding fundamentally in contract, rather than tort. In reversing the trial court, the Fourth Circuit was particularly dissatisfied with the trial court "misconceiving the basic character of the lawsuit." Id. at 345. The court found that the district court "ignored North Carolina law limiting the circumstances under which an ordinary contract dispute can be transformed into a tort action." Id. The court explained at length, concluding:

> In recognition of the fundamental difference between tort and contract claims, and in order to keep open-ended tort damages from distorting contractual relations, North Carolina has recognized an "independent tort" arising out of breach of contract only in "carefully circumscribed" circumstances. [citations omitted]. The district court failed to limit plaintiffs' tort claims to only those claims "identifiable" and distinct from the primary breach of contract claim, as North Carolina law requires. [citation omitted]. For example, plaintiff's collection of tort claims includes an allegation of fraud and a complaint that Meineke negligently managed the WAC account. But it is plain that "[t]he mere failure to carry out a promise in contract. . . does not support a tort action for fraud." [citations omitted].
> * * *
> Likewise, the district court should not have allowed the UTPA claim to piggyback on plaintiffs' breach of contract action. It has been said that because "[p]roof of unfair or deceptive trade practices entitles a plaintiff to treble damages," a UTPA count "constitutes a boilerplate claim in most every complaint based on a commercial or consumer transaction in North

34

Carolina." [citations omitted].  To correct this
tendency, and to keep control of the
extraordinary damages authorized by the UTPA,
North Carolina courts have repeatedly held that a
"mere breach of contract, even if intentional, is
not sufficiently unfair or deceptive to sustain
an action under [the UTPA,] N.C.G.S. § 75-1.1."
[citations omitted].  Even though "[i]n a sense,
unfairness inheres in every breach of contract
when one of the contracting parties is denied the
advantage for which he contracted," [citation
omitted], North Carolina law requires a showing
of "substantial aggravating circumstances" to
support a claim under the UTPA [citation
omitted]. * * * Given the contractual center of
this dispute, plaintiffs' UTPA claims are out of
place.

Id. at 346-47.  The "contractual center" of the Trustee's claims

in this case closely mirrors the claims of the franchisees in

Meineke.  The Trustee has failed to allege sufficient and

specific facts that would establish "carefully circumscribed"

aggravating factors that would give rise to a Chapter 75 claim.

Therefore, this claim under the UDTPA would not survive a motion

to dismiss and it would be futile for NCVA to include this claim

in its amended complaint.

### 6. Aiding and Abetting Conversion

Plaintiff's sixth claim against Dealers Assurance is for

aiding and abetting conversion.  Ohio law does not recognize a

cause of action for civil aiding and abetting, such as aiding

and abetting conversion.  See DeVries Dairy, L.L.C. v. White

Eagle Coop. Assn., Inc., 132 Ohio St. 3d 516, 517, 974 N.E.2d

1194, 1194 (2012); see also Blake v. Wells Fargo Bank, NA, 916

F. Supp. 2d 839, 843 (S.D. Ohio 2013) ("With the DeVries Dairy decision, there is now conclusive authority from Ohio's highest court that a claim for civil aiding and abetting under Section 876 of the Restatement of Torts is not cognizable under Ohio law.").

Therefore, this claim must also be dismissed under Rule 12(b)(6) and would be futile to include in an amended complaint.

### 7. Unjust Enrichment

"The necessary elements of a claim for unjust enrichment include: '(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment.'" Brosz v. Fishman, 99 F. Supp. 3d 776, 788 (S.D. Ohio 2015) (citing Grey v. Walgreen Co., 197 Ohio App.3d 418, 967 N.E.2d 1249, 1255 (2011)). "However, a claim pursuant to [unjust enrichment] is incompatible with claims pursuant to an express contract, and the existence of an express contract between the parties bars recovery under the doctrine of unjust enrichment." In re Estate of Popov, No. 02CA26, 2003 WL 22017299, at *4 (Ohio Ct. App. May 21, 2003).

Since there is an express contract between the parties, Plaintiff's claim for unjust enrichment is barred and fails as a

matter of law.   Therefore this claim would be futile to include in an amended complaint against Dealers Assurance.

## CONCLUSION

Based upon the foregoing, the Court will enter its Order:

1.   Granting in part NCVA's Amended Motion to Amend with respect to the claim for breach of contract;

2.   Denying NCVA's Amended Motion to Amend with respect to all other proposed claims;

3.   Providing that NCVA shall amend its complaint within fourteen (14) days of the date of the Court's Order;

4.   Providing that the amended complaint shall be in the form of a single pleading consolidated against all defendants without incorporation by reference to other pleadings;

5.   Providing consistent with Rule 15(a)(3) Fed. R. Civ. P. that all defendants in this adversary proceeding shall have fourteen (14) days to respond to the amended complaint unless otherwise extended by further order of this Court; and

6.   Setting a further pre-trial hearing in this matter to consider scheduling and any other matters properly considered under Rule 16 Fed. R. Civ. P., made applicable to this adversary proceeding by Bankruptcy Rule 7016.

[End of Document]

## Parties in Interest

**J. Alexander S. Barrett**
Hagan Barrett & Langley PLLC
Suite 00
300 North Greene Street
Greensboro, NC 27401

**Sara A. Conti**
P. O. Box 939
Carrboro, NC 27510

**John Paul H. Cournoyer**
Northen Blue, LLP
Suite 435
1414 Raleigh Road
Chapel Hill, NC 27517

**The Fidelity Bank**
c/o Mary W. Willis, Registered Agent
100 S. Main Street
P.O. Box 8 (27526-0008)
Fuquay-Varina, NC 27526

**William L. Esser, IV**
c/o Parker Poe Adams & Bernstein, L.L.P.
Three Wachovia Center
401 South Tryon Street, Suite 3000

**Holmes Harden**
301 Fayetteville Street
Suite 1700
Raleigh, NC 27061

**D. Wesley Newhouse**
**Michael S. Kolman**
Newhouse, Prophater, Kolman & Hogan, LLC
5025 Arlington Centre Blvd., Suite 400
Columbus, OH 43220

**Michael L. Dillard**
**Alan F. Berliner**
Thompson Hine, LLP
41 South High Street
Suite 1700
Columbus, OH 43215-6101

**Andrew L. Turscak, Jr.**
Thompson Hine, LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114-1291

**William P. Miller**
Bankruptcy Administrator
101 South Edgeworth Street
Greensboro, NC 27401